## J. H. EHMCKE vs. L. C. PORTER.

### February 13, 1891.

**Master and Servant — Dangerous Premises — Assumption of Risk— Promise to Make Safe.**—A servant whose duties require him to work in a place known by him to be unsafe, so that he would otherwise be taken to have assumed the risk, cannot relieve himself from such assumption of risk by showing a promise to make the place safe by one other than his master, unless such other person had authority to determine what should be done for the safety of those employed in the place, and to do it or have it done.

Appeal by plaintiff from an order of the district court for Winona county, *Start,* J., presiding, refusing a new trial after a verdict of $2,000 for plaintiff.

*Gale & Brown* and *M. B. Webber,* for appellant.

*James A. Tawney,* for respondent.

GILFILLAN, C. J.[1] Defendant owned and operated an elevator in connection with a flouring-mill, and the plaintiff was in his employment as foreman of the elevator. On the first floor of the elevator was a narrow passage-way between the bins, under the floor of which ran what is called the "conveyor," an iron screw revolving with great rapidity when in operation, used to convey the grain to what are called the "elevator legs." At places directly over the conveyor, boards, 14 inches wide, were fitted into the floor, leaving an even surface, but left unfastened so that they could be lifted out and the conveyor exposed whenever occasion might require. When these boards were in place, the passage-way was safe, but, if one of them was left out, it rendered the passage dangerous to any one passing along it; the danger being that he might step into the opening upon the conveyor. The rule of the elevator was that any one lifting out one of these boards should replace it before leaving; and this rule had always been observed prior to the occasion on which the injury for which the action is brought occurred. The only danger from this condition

---

[1] Vanderburgh, J., took no part in this case.

of things was that some employe at the elevator might disregard the rule, and leave one of these openings exposed; otherwise, the passage was entirely safe. Such had been the condition of things for several years during which plaintiff had been foreman, and he knew the danger of that condition as fully as did the defendant. Shortly prior to the accident, one of the employes of the elevator took out one of the boards for the purpose of shovelling grain in upon the conveyor, as plaintiff had directed him to do, and he continued at that work until plaintiff directed him to do something else, which, leaving the board out and the conveyor exposed, he proceeded to do; and at about the same time the plaintiff, not knowing that the board was out, started to go through the passage towards the opening thus left, taking with him, as he had always done, a lighted lantern, which went out before he had gone far; and he then, without any light, continued on until he stepped into the opening upon the conveyor, and was injured so that it was necessary to amputate his leg. He therefore brings this action, alleging that the injury was caused by the negligence of the defendant in having the passage-way in a dangerous condition.

If it were necessary to consider the questions of the defendant's negligence and of contributory negligence on the part of plaintiff, it would be difficult to sustain the verdict; but we do not deem it necessary, for on another point the evidence falls short of making a case for the plaintiff. He, having continued in the employment with full knowledge of whatever danger there was to those employed about the elevator from the condition of the passage-way and the conveyor, must be taken to have voluntarily assumed the risks incident to the employment and that condition, unless the evidence reasonably tends to show facts that except the case from the operation of that rule. A servant is relieved from being held to have assumed the risks where the master has induced him to continue in the employment by a promise to remedy the defects creating the danger, unless where the danger is so imminent and immediate that an ordinarily prudent man would refuse to continue until the defects can be removed; and the plaintiff attempted on the trial to bring his case within that exception. There was no evidence of any such promise by the defendant

himself.    But a master may intrust to another the performance of the duty he owes to his servants to exercise care in providing them a safe place in which, and safe instrumentalities with which, to do their work; and, when he has done so, a promise to a servant by such other to remedy the dangerous condition of things is equivalent to a promise by the master himself.    Plaintiff proved a request by him to one Bitzen, the millwright employed at the elevator and mill, to fix iron rods—something like a grating, we infer—over the opening in question, and a promise by Bitzen to do so.    Had defendant given Bitzen authority to determine what precautions were necessary for the safety of those employed about the elevator, and to take such precautions; had he intrusted to Bitzen the performance of his own duty in that respect,—then plaintiff might have relied on Bitzen's promise as the promise of the defendant.    Right there, the plaintiff's evidence fails to relieve him from the assumption of risk.    There is no evidence that Bitzen was in any way in charge of the elevator, or over the men there employed, or that it was his duty, or he had any authority, to determine upon and make any changes in its construction.    He appears to have been merely an employe whose business it was to make repairs when needed, and perhaps to make alterations determined on by somebody else who might have authority to determine upon them and have them made.    That is the utmost that can be claimed for the evidence in respect to his position and authority at the elevator; and that does not tend to prove him the *alter ego* of defendant in respect to his duty of care for the safety of employes.

Order reversed.