RAILROAD   v.   KENLEY.

(*Nashville.*    February 7, 1893.)

1. MASTER AND SERVANT.    *Servant's acts admissible in evidence against master, when.*

Brakeman sued railroad company for personal injuries sustained in its service by reason of the company's negligent failure to provide safe "foot-rest" and "hand-hold" for ascending to brakes on top of car. The defense was plaintiff's contributory negligence, which was supported by proof that he knew of the defects that caused the injury and still continued in service. The plaintiff, in rebuttal of this defense, was permitted to prove, over defendant's objection, that he made complaint to the conductor of the train in regard to said defects, and received of him assurance that they should be remedied.

*Held:* There is no error in the admission of this evidence in rebuttal.

2. SAME.    *Same.    Contributory negligence rebutted.*

And it is a complete answer to such charge of contributory negligence that the brakeman complained of the defects in question to the conductor in charge of the train, and received his assurance that necessary repairs should be made, and that he remained in the company's service in consequence of that assurance. The conductor of a train, though not authorized to make repairs, bears the relation of vice-principal to the brakemen on his train, and his knowledge of defects in the cars composing his train, and promise to repair them, are binding upon the company.

Cases cited and approved: Railroad *v.* Wheless, 10 Lea, 747; Railroad *v.* Collins, 85 Tenn., 227; Railroad *v.* Bowler, 9 Heis., 870; Guthrie *v.* Railroad, 11 Lea, 372; Elliott *v.* Railroad, 1 Cold., 618.

3. SAME.    *Same.    Rule construed.*

Brakemen are not required to make complaint of known defects in cars to the master of trains, and not to their conductor, under a rule of the company in these words: "Conductors, flagmen, brakemen, and train-porters to report to, and receive their instructions from, the master of trains." This rule has no application to complaints about defective appliances.

4. SAME.   *Correct charge as to master's liability to servant injured by defective appliances.*

The Court's charge upon the leading features of this case is quoted in the opinion, and pronounced a "clear, pointed, and sound exposition of the law."

Cases cited and approved: Railroad *v.* Duffield, 12 Lea, 63; 100 U. S., 213; 128 U. S., 91.

5. SAME.   *Omissions in not cause for reversal, when.*

If the Court's charge upon the main features of the case is full and accurate, there will be no reversal for Court's failure to charge upon minor or collateral matters, where no requests have been made for additional instructions upon the omitted points, unless it appears that the failure to charge upon a particular aspect of the case is equivalent, under the circumstances, to an affirmatively erroneous charge.

6. NEGLIGENCE.   *Proximate cause.   Concurrent acts of different persons.*

In suit by brakeman against railroad company for personal injuries, there was evidence tending to show that he sustained his injuries by reason of the company's negligence in failing to supply safe "foot-rest" for ascending to brakes on top of car.   There was also evidence tending to show that the injuries resulted from the engineer's negligence in causing a sudden jam of the cars as the brakeman was in the act of ascending the car by means of the defective "foot-rest."

*Held:* The Court charged correctly, upon these facts, that plaintiff could not recover if the engineer's negligence was the cause of the injury—he being a fellow-servant.   But that plaintiff was entitled to recover, notwithstanding the engineer's negligence, if the defective "foot-rest" was the proximate cause of the injury.

7. ASSIGNMENT OF ERRORS.   *Insufficient, when.*

Assignment of error in a law cause averring that "the testimony greatly *preponderates* against the finding of the jury" is insufficient in law. This Court will not set aside a verdict, in any case, for the reason assigned.

---

DAVIDSON COUNTY.

---

Appeal from Circuit Court of Davidson County.
W. K. MCALISTER, J.

BAXTER SMITH and J. S. PILCHER for Railroad.

STEGER, WASHINGTON & JACKSON for Kenley.

LURTON, C. J.    The defendant in error, while in the discharge of his duty as a brakeman, in the employment of the railroad company, sustained a serious injury, by which he lost an arm.    He has recovered a judgment against the company, from which it has appealed.    Many errors have been assigned, some of which will be disposed of orally, as involving no point requiring a written opinion.    The negligence of the company was in an alleged defective "foot-rest" and "hand-hold," being appliances furnished by the company to aid brakemen in safely ascending to the brakes on the top of the caboose-car.

The first and second assignments are in effect the same.    They assign as error the ruling of the Circuit Judge in permitting, over objection, evidence that the plaintiff had made complaint to the conductor of the train in which this car was placed, and upon which plaintiff was braking. The substance of the objection advanced against this evidence was, that the conductor had no power or agency in the construction or repairing of cars, and that he has only charge and control of the train as delivered to him from the time it is put in his charge until it arrives at its destination; that he has nothing to do with cars put into his train, but must take them just as they are turned

14—8 P

over to him. We think this evidence was com-
petent. The relation of "master and servant,"
"superior and inferior," exists between the con-
ductor of a train and his subordinates engaged in
the running and management of it.

The rule is well settled in this State that "the
master is liable for injuries resulting to one serv-
ant from the negligence of another servant who
is the immediate superior of the first."

"The rule," says Judge Cooper, "is based not
upon the idea of the relative rank of the two
servants, or the general superiority of the one in
position, intelligence, skill, or in the wages received,
but upon the ground that the one is placed under
the orders and direction of the other, and required
to submit to and obey such orders in the per-
formance of his duties; that the *inferior* is placed
in the position of a servant to the *superior.* In
such cases, the superior is held to represent the
master." *Railroad* v. *Wheless,* 10 Lea, 747; *Rail-
road* v. *Collins,* 85 Tenn., 227.

Thus, a "section boss" was held the "superior,"
and to represent the master as to the laborers un-
der him engaged in repairing the track, and the
company held liable for an injury to such a sec-
tion hand, resulting from the negligence of the
"boss." *Railroad* v. *Bowler,* 9 Heis., 870.

A defective "maul" was furnished to a bridge
carpenter by his section foreman, whereby the for-
mer was injured. The company was held liable
for the negligence of the foreman, as standing for

and representing the master. *Guthrie* v. *Railroad*, 11 Lea, 372.

When a corporation acts at all, it must act through agents. If one of these agents, with respect to other agents, stands as the superior and represents the master because of their subordination to him, it must follow, as matter of law, that, within the scope of this relationship, the knowledge of this vice-principal must be the knowledge of the common employer. This principle was applied in the early and leading case of *Elliott* v. *Railroad*, 1 Cold., 618. The plaintiff, Elliott, was employed on a locomotive-engine to pass wood from the tender back to the fireman. The engine was under the care and control of an engineer. It was one kept exclusively for pushing freight-trains up a very steep grade on the Cumberland Mountain. The engine was defective and unfit for the work in which it was engaged. By reason of this defect, it ran off the track, turned over, and injured the plaintiff. An important question in the case was as to the knowledge of the company as to the defective character of the engine and track. The trial Judge ruled that the knowledge of the engineer was imputed to the corporation.

The opinion was by McKinney, J., who said: "The established rule that notice to an agent in the transaction for which he is employed, and within the scope of the authority confided to him, is notice to the principal, applies equally to a cor-

poration as to a natural person. In general, the only mode in which a corporation aggregate can act is through the intervention of agents, either specially designated by the act of the incorporation or appointed and authorized by the corporation in pursuance of it. And the corporation is responsible for the acts of the agent; and, of necessity, the knowledge of a fact by that agent, directly connected with the duties of the business confided to his care, must be chargeable to the corporation."

It is proper, in this connection, to consider the sixth, seventh, and eighth assignments of error. The company had introduced in evidence certain rules promulgated for the government of its employes. Rule 132 was in these words:

" Conductors, flagmen, brakemen, and train porters report to, and receive their instructions from, the master of trains."

The Court was requested to charge, and did charge, that certain rules which had been shown in evidence, including the rule just quoted, would be reasonable; "and that if the plaintiff failed to observe and obey the same, and was injured in consequence of said failure, or if his failure to observe the same was the proximate cause, or materially contributed · to the accident, he cannot recover in this action."

In addition to this, he was asked to charge as follows: "That if, under a rule of defendant, in force at the time of the accident in question, it

was the duty of brakemen to report to, and receive their instructions from, the master of trains; then, and in that case, if there was a defect in the steps or 'hand-hold' at the end or ends of the caboose in question, it was the duty of the plaintiff to have reported that fact to the master of trains, and that that would have been notice to the company, and that, under said rule, no one except the master of trains, would have been authorized or warranted in promising to repair the same, so that the plaintiff could rely on said promise, and continue to use the same, and be protected by such promise."

The trial Judge was also asked to charge "that a general rule of law is that, if a defect in a car exists, notice of the same must be brought home to a car-inspector, to be notice to the company, or that he had been negligent in not discovering it, or notice to the employes of the company having charge of the machinery of the company to repair same."

He was further asked to charge " that if plaintiff knew of the alleged defect in the step or foot-rest, then he cannot recover, unless he should affirmatively show by proof that he had complained either to Hartung, the car-repairer, or to the master of trains of the alleged defect, and the latter or one of them had agreed to repair or change it, and he had continued to work with the car, relying on such promise."

These several requests were refused. There was

no error in this. So much as were sound had been sufficiently charged. We do not think Rule 132 had any reference to complaints concerning a defective appliance, as an unfit tool. Notice to the company was imputed by the notice or complaint made to the conductor. The promise of the latter to have the same repaired, or his statement that the car-repairer had promised to repair as soon as he could, and that it would be done very soon, was a sufficient assurance to justify the plaintiff in believing that the defect would be remedied within a reasonable time. That the conductor was not himself authorized to make the repair or alteration, is no valid objection. The conductor was the immediate superior of the plaintiff, and his assurance that the matter would be remedied is, in law, to be imputed to the master. As the vice-principal in charge of this train, and as to the crew operating the train, notice to him was notice to the master; and an assurance of remedy made upon complaint of his own subordinate, and in regard to an appliance upon his own train, was an act within the sphere of his duty toward his inferior.

The Court charged the jury as follows:

" The employer is bound to use all reasonable precautions for the safety of his employes, and must furnish such machinery and appliances as will be reasonably safe and suitable. If, however, the employe, after entering upon the service, discovers that an appliance is unsafe or

unfit in any particular, and, notwithstanding such knowledge, voluntarily continues in the employment without objection or complaint, he is assumed to risk the danger thus known. To entitle the plaintiff to recover in this cause, he is called upon to establish the following propositions, to wit:

" *First.*—That the foot-rest was defective.

"*Second.*—That he made complaint to the company of the defect, and that the company promised to repair it.

" If you should find from the evidence that the foot-rest was deficient in dimensions, and was attached to the caboose at an angle of inclination, when it should have been put on horizontally, you will next inquire whether plaintiff made any complaint about it to the company, and whether the latter promised to remedy the defect. If Kenley complained of the defective foot-rest to Norman, the conductor of the train, who assured Kenley that the defect would be remedied, Kenley will not be presumed to have waived the defect by remaining for a reasonable length of time in the service, unless the danger of using the foot-rest was so obvious that no prudent man would have taken the risk; and what will constitute such reasonable length of time for the repairs to be made is a question for the determination of the jury. But if, after the expiration of a reasonable time, Kenley saw, or might have seen if he had taken the trouble to examine, that the foot-rest had not been remedied, and he nevertheless continued in

the service, he is deemed to have accepted the risk of the danger, and the company will not be liable."

The error assigned upon this is in these words: "Because, as shown by the facts of this case, which are mentioned and cited in the foregoing statement, the principles of law declared were not applicable to this case. The Court, by this charge, rested the case upon the alleged defect in the foot-rest, whereas it was undisputed that the plaintiff had full knowledge of the alleged defect, and that there were present two other perfectly safe modes of ascending to the top of the train. Therefore, it was his own fault for plaintiff to have used the alleged defective foot-rest.

"The case before the Court was not one in which an employe, after knowledge of, and a request to repair a defective appliance, could continue in the employment of defendant for a reasonable length of time for repairs to be made, and it was error in the trial Judge to treat the case in that light."

The charge as delivered was clear, pointed, and a sound exposition of the law. *Hough* v. *Railway Company*, 100 U. S., 213; *Conroy* v. *Vulcan Iron Works*, 62 Mo., 35; *Belair* v. *Railroad*, 43 Iowa, 662; 14 Am. & Eng. Ency. of Law, 856; Wood on Master and Servant, 766.

There was evidence tending to show other ways of ascending to the top of this train. Whether these ways were safer or as convenient was a dis-

puted fact. Neither is it clear that, if in the 'exigency of obeying a sudden command an employe uses a defective appliance, when a safer one was equally at his disposal, that he thereby voluntarily assumes the risk. *Kane* v. *Railway Company*, 128 U. S., 91; *Railroad* v. *Duffield*, 12 Lea, 63.

However this may be, the Circuit Judge was not requested to charge upon. this aspect of the case. His charge was applicable to the chief point in controversy, and contains no affirmative error. He cannot be put in error under such circumstances, when his attention was not called to the defense now suggested. We cannot on this record say that his failure to charge upon an aspect of the case not called to his attention is equivalent to an affirmatively erroneous charge.

There was evidence tending to show that at the moment Kenley put his foot upon the defective foot-rest, to ascend to the top of the train, that there was a sudden jamming of the cars together, and that the injury was brought about by the concurrent negligence of the engineer in causing the jam, and of the company through the defective foot-rest.

The Circuit Judge, in substance, charged the jury that, if the proximate cause of the injury was the negligence of the engineer, plaintiff could not recover, as the engineer and brakeman were, in law, fellow-servants.

He also charged: "But if you find that the foot-rest, on account of its construction, was' the

proximate cause of the accident, then the company will be liable, notwithstanding the jam of the cars, provided you believe from the evidence that the injury would not have occurred had the foot-rest been in reasonably safe condition."

The error assigned is, "that the plaintiff was not entitled to recover, if the accident occurred as a result of the concurrent negligence of the engineer in jamming the train just as Kenley stepped on the foot-rest, and the alleged defective construction of the foot-rest."

The charge was fully as favorable as the railroad company was entitled to. The jury were distinctly told that they must find that the defective foot-rest was the proximate cause of the injury, and that they must find, "that the injury would not have occurred had the foot-rest been in a reasonably safe condition."

The rule, as stated by Mr. Thompson in his work upon negligence, concerning the concurrent negligence of a fellow-servant and of the master, is as follows:

"If the negligence of the master combines with the negligence of a fellow-servant, and the two contribute to the injury, the servant injured may recover damages of the master." 2 Thompson on Neg., 981.

The reason of the rule is obvious. The servant contracts to assume the dangers incident to the negligence of his fellow-servant, but he neither does nor can contract to assume the risk of the

Railroad *v.* Kenley.

negligence of the master. Not agreeing to assume any part of the negligence of the master, if such negligence approximately contribute to his injury, he may recover, notwithstanding his injury was due to the combined negligence of the master and his fellow-servant. The cases so holding are numerous, and are cited by Mr. Thompson.

The fifteenth assignment is in these words: "The testimony greatly *preponderates* against the finding of the jury. See citations of evidence in statement of the case."

This assignment raises no question. It is immaterial, under the well-settled rule of this Court, that the evidence does "greatly preponderate against the verdict." Such preponderance will not justify us in setting aside the verdict of a jury. There was material evidence which, if believed by the jury, justified the result.

Judgment affirmed.