<hr />

## GEORGE H. CARSON v. HENRY C. TURRISH.
## LAURA VIVIAN CARSON v. SAME.[1]

### July 12, 1918.

### Nos. 20,912, 20,913.

**Negligence not imputable to guests of driver of automobile — contributory negligence.**

1. In an action for damages received in a collision at a street crossing between an auto in which the plaintiffs were riding as guests and an auto of the defendant, the evidence sustains the jury's finding that the chauffeur of the defendant was negligent. The negligence, if any, of the driver of the other car was not imputable to the plaintiffs; and the finding of the jury against the defendant upon the issue of contributory negligence is sustained by the evidence.

[1]Reported in 168 N. W. 349.

**Rights of vehicles in public street — duty of drivers — evidence of custom.**

2. The relative rights of vehicles in a street are in general equal and reciprocal, except as fixed by positive law, and the driver of each is under obligation to act with due regard to the rights of others. The court did not err in so charging the jury relative to the rights of the autos at the crossing; nor did it err in refusing the defendant's offer to prove a general custom over the country and in the city where the collision occurred that at street intersections traffic on main thoroughfares has the right of way and traffic coming onto such thoroughfares from side streets must exercise special care and caution to avoid collisions.

**Evidence of expert as to wheel tracks admissible.**

3. The court did not err in permitting a witness for whose testimony a foundation was laid to testify as an expert on rebuttal as to wheel tracks on the pavement at the place of the collision the morning after and his opinion of the movements of the car which they indicated.

**Burden of proving contributory negligence — presumption of due care.**

4. The court gave an instruction, requested by the plaintiffs, to the effect that the burden of proving contributory negligence was upon the defendant and that the presumption was that the plaintiffs were in the exercise of due care. The statement as to the presumption is disapproved; but the giving of it was not prejudicial and should not result in a new trial.

**Damages for permanent injury — charge to jury.**

5. Damages cannot be awarded as for a permanent injury unless there is reasonable certainty that it will be permanent. A charge to the effect that the plaintiff is entitled to damages compensating her for pain and suffering up to the time of the trial "and for any pain and suffering which under the evidence you believe she will sustain in the future as the result of the accident" correctly states the rule.

**Damages not excessive.**

6. The verdicts are not excessive.

**Misconduct of counsel.**

7. There was no misconduct of counsel calling for a new trial.

Two actions in the district court for St. Louis county, one by the wife to recover $15,000 for injuries received in a collision with an automobile belonging to defendant, and the other by the husband to recover

$5,000 for injuries to himself, $1,000 for the injuries sustained by the wife, and $275 for medical attendance, loss of services and companionship of his wife. As counterclaim in each action, defendant claimed $1,400 for damages to his automobile. The cases were tried together before Fesler, J., and a jury which returned verdicts for $8,125 and $2,000, respectively. From orders denying his motions for a new trial, defendant appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*Benjamin M. Goldberg, Harry E. Boyle* and *Jesse L. Cohen,* for respondents.

DIBELL, C.

Two actions for damages for personal injuries received in an automobile collision, in one of which Laura V. Carson was the plaintiff, and in the other her husband, George H. Carson, both against Henry C. Turrish, were tried together. There were verdicts for the plaintiffs and the defendant appeals from the orders denying his motions for a new trial.

1. The plaintiffs were riding in an automobile in Duluth as guests of a Mr. and Mrs. Beck and were injured in a collision with the auto of the defendant driven by his chauffeur. The defendant and his family had attended the theatre, he and his wife had been driven home, and the chauffeur was returning alone for some of the family who had stopped at the club. He was going westerly on East Fourth street. The car in which the plaintiffs were riding was going north on Twenty-first avenue east which intersects Fourth street at right angles. Mrs. Beck was driving. The two cars came into collision at the crossing near the northeasterly corner. The Beck car was struck near the windshield on the right side. It was at 11.15 p. m. of October 14, 1916, and the night was clear. The claim of the plaintiffs is that the defendant's chauffeur was driving at a negligent rate of speed and that his negligence was the proximate cause of the injury. The evidence satisfactorily sustains the finding of the jury to that effect and a recital of it would serve no useful purpose.

The plaintiffs were the guests of the Becks, and the negligence of Mrs. Beck, if any, was not imputable to them, but their personal neg-

ligence contributing to the injury would prevent a recovery. Christison v. St. Paul City Ry. Co. 138 Minn. 456, 165 N. W. 273; McDonald v. Mesaba Ry. Co. 137 Minn. 275, 163 N. W. 298, and cases cited. The question of the contributory negligence of the plaintiff was submitted to the jury and the verdicts for the plaintiffs necessarily include a finding for the plaintiffs on this issue. There is no fault to be found with it and the evidence is not worth while discussing.

2. The defendant predicates error upon the charge of the court as follows:

"The relative rights of vehicles in a public highway are equal and reciprocal. One has no more right than the other and each is obliged to act with due regard to the movements of others entitled to be upon the street. The driver of neither vehicle is called upon to anticipate negligence on the part of the driver of the other vehicle."

And in connection with this it is urged that it was error to sustain an objection to the following offer of proof:

"Defendant offers to prove by the witness now on the stand that it is the uniform custom and practice in this city, as well as generally over the country, that traffic on main thoroughfares, and main streets has the right of way over traffic coming from side streets or avenues onto such main thoroughfares. And that traffic coming from side streets onto main thoroughfares, streets, is required to exercise special care and caution to avoid collisions with traffic on main thoroughfares."

These two matters are conveniently argued together by counsel and we consider them together.

It was in evidence that Fourth street is a so-called main thoroughfare and that Twenty-first avenue east is a so-called side street. They are in a residential district. Fourth street is well paved and carries the double tracks of the street railway. Twenty-first avenue was recently asphalted, comes to Fourth street from the south on an upgrade, and leaves it on an upgrade as it goes north. They are much used streets but there is no congestion of traffic on them.

The charge as to the relative rights of vehicles is in general accord with our decisions. Dunnell, Minn. Dig. & 1916 Supp. § 4166, and cases cited. The streets belong to the public for purposes of travel. The court has been averse to giving by its decisions an arbitrary right

or a priority in right of use to one over another. It has applied the general principle stated to the rights of the public and a street railway, due regard being had to the character of the railway use. Dunnell, Minn. Dig. & 1916 Supp. § 9013, and cases cited. All users, pedestrians, drivers of horse-drawn vehicles, chauffeurs and motormen, must respect the reciprocal rights of others, and must exercise due care to avoid injuring them; and the factors to be considered in measuring conduct are many:

The propriety of the proffered proof of custom has had careful attention. That on an issue of negligence a known custom or usage may in a proper case be proved as bearing upon negligence or the absence of it is not to be questioned. Dunnell, Minn. Dig. & 1916 Supp. §§ 7049, 7050. So in O'Neil v. Potts, 130 Minn. 353, 153 N. W. 856, it was held proper to show a practice among drivers of autos to extend the hand to the side before stopping as a signal to cars following. The question presented by the offer of proof is different. It was sought to show that main street traffic has a right of way over side street traffic, something more than an equal right at the crossing, and that the side street traffic is bound to exercise "special care and caution to avoid collisions with traffic on main thoroughfares." In effect it was sought to establish something approximating a rule or law of the road, though we do not understand counsel to claim that the custom for which he contends gives an arbitrary right, though a substantial advantage. We think the ruling was correct.

Indeed it is the rule in many jurisdictions that the vehicle first at the crossing without negligence has the right of way across. Elgin Dairy Co. v. Shepherd, 183 Ind. 466, 108 N. E. 234, 109 N. E. 353; Mayer v. Mellette (Ind. App.) 114 N. E. 241; New Jersey Elec. Ry. Co. v. Miller, 59 N. J. Law, 423, 36 Atl. 885, 39. Atl. 645; Earle v. Cons. Tr. Co. 64 N. J. Law, 573, 46 Atl. 613; Rabinowitz v. Hawthorne, 89 N. J. Law, 308, 98 Atl. 315; Knox v. New Jersey St. Ry. Co. 70 N. J. Law, 347, 57 Atl. 423, 1 Ann. Cas. 164; McClung v. Pennsylvania T. C. Co. 252 Pa. St. 478, 97 Atl. 694; Yuill v. Berryman, 94 Wash. 458, 162 Pac. 513; Buhrens v. Dry Dock E. B. & B. R. Co. 53 Hun, 571, affirmed in 125 N. Y. 702, 26 N. E. 752; Toledo El. St. Ry. Co. v. Westenhuber, 12 Oh. Cir. Dec. 22; Rupp v. Keebler, 175 Ill. App

619; 13 R. C. L. p. 278, § 230; note 1 Ann. Cas. 164; note L.R.A. 1917D, 690, 693; Babbitt, Motor Vehicles, § 382; Berry, Automobiles, § 140; Huddy, Automobiles, § 84d; 14 Dec. Dig. Mun. Corp. § 705 (2). Such cases as these are not in hostility to the principle of equality of right in the streets. As a part of such equality they suggest the right of the one first at a crossing first to use it. In none is the right an absolute one exercisable arbitrarily, or irrespective of other conditions present, or without regard to the rights and safety of others. It is little if anything more than a convenient and usually fair rule of guidance for travelers; and in no sense is it a fixed test of negligence. It must be exercised with decent respect to the rights of others and with due regard to the character of the travel and other conditions present.

Some courts seem not to adopt a specific rule, perhaps have had no occasion for doing so in the cases before them, and are content to leave the general question of negligence to be determined from all the facts surrounding. See Hennessey v. Taylor, 189 Mass. 583, 76 N. E. 224, 3 L.R.A.(N.S.) 345, 4 Ann. Cas. 396; Gilbert v. Burque, 72 N. H. 521, 57 Atl. 927; Koester v. Decker, 22 Misc. 353, 49 N. Y. Supp. 276; Weidner v. Otter, 171 Ky. 167, 188 S. W. 335; Virgilio v. Walker, 254 Pa. St. 241, 98 Atl. 815; 14 Dec. Dig. Mun. Corp. § 705 (2); Dunnell, Minn. Dig. & 1916 Supp. § 4166, et seq. Doubtless the character of the crossing, the topography, the character of the vehicle, the nature and extent of the traffic, and the fact that one is prior in time and one or the other must yield, are practical considerations. In some states there are traffic regulations established by statute or ordinance giving a right of way. We recently had under consideration an ordinance which gave traffic on a specified street the right of way over traffic on a specified intersecting street. Bruce v. Ryan, 138 Minn. 264, 164 N. W. 982. In some the right of way is given to traffic on north and south streets, or on east and west streets, or is made to depend on the right or left approach of the drivers, and in some the right is based on the character of the traffic. See note L.R.A.1915D, 1021; note L.R.A.1917D, 693; 14 Dec. Dig. Mun. Corp. § 703 (1). Our statute now requires a driver to yield to one approaching the intersection from his right. Laws 1917 p. 164, c. 119, § 22.

It is clear that there is no universal custom that traffic on main thor-

oughfares has the right of way and that side street traffic must yield and exercise special care. It is contrary to the cases. They recognize a rule inconsistent with it. We do not understand that there is hostility between the cases suggesting that the one first at the crossing has priority and those which, without mentioning the question of first arrival, require of all care appropriate to the situation and commensurate with the dangers. Nor are we now concerned with these matters except as they bear upon the custom sought to be proved by the defendant. It seems quite clear that the Beck car was there first, but upon the record we are not concerned with that question. We may note that there was no offer to prove a particular custom at this crossing of which the two drivers or either of them was cognizant. The court was right in its general statement of equality of right at the crossing and in refusing the offered proof of a custom giving the right of way to the traffic on the street and requiring special care on the part of traffic coming onto the street from the avenue.

3. A witness who had considerable familiarity with autos, their make, equipment, operation and driving, was at the scene of the collision the morning following. He testified as to the wheel marks which he found on the pavement and gave his opinion of what they indicated relative to the movement of the defendant's car. The witness was sufficiently qualified to give an opinion. The conditions were so nearly as at the time of the accident that it was not error to receive his testimony and it might be of value to the jury. It had the tendency to contradict the testimony of the chauffeur as to the movements of his car and was receivable in rebuttal.

4. Upon the request of the plaintiff this instruction was given:

"The burden of proving contributory negligence on the part of the plaintiffs, or either of them, in this action is upon the defendant. The presumption is that the persons injured were in the exercise of due care at the time of the injury."

Counsel were unfortunate in incorporating a statement of presumption of due care on the part of the plaintiffs. The burden of proof of want of due care, which is simply contributory negligence, was upon the defendant. There was no presumption that either the plaintiffs or the defendant were negligent. There was no presumption that either was not

at fault except in the sense that the burden of proving fault was on the other. Where there is evidence bearing on the question of contributory negligence, and the burden of proof is put upon the defendant, where it belongs in this state, there should not be added a statement that it is presumed that the plaintiff was in the exercise of due care. The statement of the burden of proof gives the law for the guidance of the jury and the plaintiff is not entitled to the statement of a presumption.

When death results, and especially where there is no direct evidence, and in some states only then, the presumption is recognized, and for very evident reasons, and is considered in determining whether the verdict is sustained. The general doctrine is well established in Minnesota. Dunnell, Minn. Dig. & 1916 Supp. § 7032, and cases. And it is held proper to state the presumption in charge to the jury. Baltimore & P. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. ed. 262; Texas & P. Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. ed. 186; Northern Pacific Ry. Co. v. Spike, 121 Fed. 44, 57 C. C. A. 384; Hutchinson v. Richmond S. G. Co. 247 Mo. Sup. 71, 152 S. W. 52. And see generally Tiffany, Death by Wrongful Act, § 189; 1 Thompson, Neg. §§ 395-402; 8 Enc. Ev. 897; 2 Jones, Ev. § 185; Wigmore, Ev. § 2510.

The question of the propriety of mentioning a presumption in the charge does not seem often to have arisen in other than death cases. A similar instruction to that given in the case before us has been sustained though without particular consideration. Baltimore & Ohio R. Co. v. McKenzie, 81 Va. 71. It has also been held erroneous. Rapp v. St. Joseph & I. R. Co. 106 Mo. 423, 17 S. W. 487; Moberly v. Kansas City, etc. R. Co. 98 Mo. 183, 11 S. W. 569. And it has been disapproved but the giving of it held not ground for reversal. Central Ry. Co. v. Smith, 74 Md. 212, 21 Atl. 706.

The general charge fully covered the essential features of the proof of negligence and contributory negligence. A very favorable instruction was given at the defendant's request. We cannot believe that the jury were misled, and no criticism or suggestion was made at the time. And on the whole the claim of contributory negligence of the plaintiffs, who were guests, was not as we view the evidence and from a practical standpoint a very live question. We disapprove the particular portion

of the instruction but hold that considering the immediate connection in which it was given, the charge as a whole, and the issues for trial, it could not have misled and should not result in a new trial.

5. In referring to the damages sustained by Mrs. Carson the court instructed the jury:

"She is entitled to damages which will fairly compensate her for the pain and suffering which she has sustained up to this time and for any pain and suffering which under the evidence you believe she will sustain in the future as the result of the accident that we have under consideration. You should allow her such damages as will fairly compensate her for any permanent injuries which she has sustained."

It is the settled law in this jurisdiction that to justify an award of damages as for permanent injuries there must be a reasonable certainty that they will be permanent and not a mere chance or probability. L'Herault v. City of Minneapolis, 69 Minn. 261, 72 N. W. 73; McBride v. St. Paul City Ry. Co. 72 Minn. 291, 75 N. W. 231; Olson v. Chicago, M. & St. P. Ry. Co. 94 Minn. 241, 102 N. W. 449. Counsel for the defendant excepted to the charge of the court, called attention to the reasonable certainty rule, and referred to the charge as if it were one authorizing a recovery for such suffering as Mrs. Carson "might sustain" in the future. Evidently this was in misapprehension of the language of the court for the words used were "will sustain" and not "might sustain." The reason of the reasonable certainty rule is that uncertain and speculative damages are not recoverable. The word "will" is one of certainty and the word "may" is one of speculation and uncertainty. This is indicated in Olson v. Chicago, M. & St. P. Ry. Co. 94 Minn. 241, 102 N. W. 449, where it was suggested that a correct charge was like the one given in the case at bar; and even there it was held that the use of *may* instead of *will* was not misleading under the facts of the case. The charge of the court was correct. The only complaint that can be made is that the court did not go farther and say that it must be reasonably certain that the suffering would be permanent. This was not specifically asked and there was no error.

6. The verdict for Mrs. Carson was for $8,125, of which we may assume $125 was for the loss of clothing, and that for Mr. Carson was for $2,000. The defendant claims that they are excessive.

Mrs. Carson was severely bruised, there were some superficial scalp wounds, one thumb was broken, there was a gash two and one-half inches down across the eyebrow, her nose was flattened, her right eye was injured, and apparently she is in a neurasthenic condition. She was unconscious for a day or so and was in the hospital for two weeks. She claims that she has suffered much and is still suffering. There is some facial disfigurement the extent of which the record does not make nearly so definite as it might. The most important injury is to the eye. From the testimony of the physicians the jury might conclude that the double vision, with which it is conceded she is affected, is substantially permanent, cannot be cured or improved by an operation, nor practically corrected by the use of glasses. Mr. Carson sustained some injury but the record leaves it indefinite. He did not make much use of a physician. He claims to have pain in his hips and his osteopathist ascribes it to an injury to the pelvic bones. He claims that it disables him from work. He is the manager of a wholesale drug house. The extent of interference with his work is not shown. There is no evidence as to the value of his time and no specific claim is made for the value of lost time. He incurred expenses for the care of his wife amounting to something like $200. The Carsons were each 40 years of age and had three children. Mrs. Carson was usually able to perform her household duties. It appears that they were accustomed to be together much and to attend entertainments and social gatherings. If all that the jury might find as to the condition of Mrs. Carson's eye, and attendant injuries including facial disfigurement, is taken as established, a very great deal of value personal to herself is taken out of life, and her husband suffers appreciably the loss of her society and companionship for which he is entitled to compensation. Quite likely the parties exaggerate their injuries. The doctors may be mistaken. Often there is marked improvement at the end of litigation. These were considerations present with the jury. The verdicts seemed to the trial court large. So do they to us. The trial court, in much better position than we to determine the question, thought they should not be disturbed. The record does not justify our interference.

7. There is a claim of misconduct of counsel for the plaintiffs. On the cross-examination of the chauffeur relative to convictions in the mu-

nicipal court counsel incorporated suggestions that he was a reckless and careless driver. That the purpose of showing convictions was to affect credibility was not suggested. Objections were sustained and counsel was persistent in repeating questions instead of excepting to the rulings and making his record. Apparently some of the testimony should have been received. There was also an insinuation that the chauffeur had been discharged by a former employer. There was a conscious effort to get to the jury the suggestion that he was a careless and reckless driver. It was not long continued and does not seem to have been considered at the time very important. While objectionable, and subject to criticism, it was not of a character calling for a new trial.

Orders affirmed.